Chancellor Gaillard,
dissenting. There is no doubt that Mr. Ancrum and Mr. Chiffelle made purchases of lumber, and that, after it was sawed, it was sold on their joint account. They sued and were sued as “ Ancrum & Chiffelle,” in 1819 and 1820, and as the mill was erected soon after the execution of the deed'in 1816, from Ancrum to Chiffelle, of half of a lot he (Ancrum) owned, it is probable that some understanding between them existed at that time respecting the business of sawing and selling lumber in which' they were to be concerned; and if the certificate signed by Ancrum 8c Chiffelle, dated on the 22d of April 1822, containing a declaration that they held as partners the land, as well that part of which was sold by Ancrum to Chiffelle in December, 1816, as the adjoining lot conveyed to them by Winslow and wife, in April 1817, be admitted as evidence, it is still more probable; for the land conveyed by Winslow and wife was occupied with the land in the deed of 1815, as part of the mill establishment, the two lots being under one fence and used for one purpose. But I do not consider this certificate as evidence, as it is brought to contradict the deeds; on the face of which the land conveyed appeared to be private and not partnership property, and to divest the private creditors of Mr. Ancrum and Mr. Chiffelle of their legal liens on their separate estates, acquired between December, 1816, the date of the first deed, and the date of the certificate.
There were unsatisfied judgments against Mr. Ancrum» prior to his deed of 1816, and another judgment was obtained against him, between the date of this deed and that of 1817, from Winslow and wife; and soon after the date of the latter deed, other judgments were entered up against him, to considerable amount. It is not shewn how the private affairs of Mr. Chiffelle stood at these respective periods; but it is admitted that Mr. Chiffelle is insolvent, and that the estate of Mr. An-crum is so also. .The contest in this case is entirely between the mill creditors of Ancrum & Chiffelle and their private creditors, and it is important to fix the time from which the partnership in the sawing business commenced. Ancrum’s deed to *33 Chiffelle, in December, 181G, affords no evidence of the existence of a partnership between them of any kind at that time; the mill was erected afterwards, and Ancrum fa Chiffelle in 1819 and 1S20, sued and were sued as Ancrum fa Chiffelle. The public had no means of knowing at the date of the deed of December, 1816, that Mr. Ancrum and Mr. Chiffelle had entered into a partnership, and the deed itself, which is merely a conveyance of half of a lot of land by Ancrum to Chiffelle in fee simple, furnishes a contrary inference. In Foster & Hale, in 3 Ves. jun. which is much relied on, a lease obtained by one partner In his own name, of land necessary to carry on a colliery, was declared to go as an incident; but the partnership was first established, and there appeared reason to believe that the money for the land was paid from the partnership funds. The letters of Burdon, the partner vvho took the lease in his ■own name, were admitted as evidence, as they might be in a question entirely between copartners. Many undertakings are carried on by partners in which the use of land is necessary, and where a purchase of land is made by one partner and a title taken for it in his individual name, but it is paid for out of the partnership funds, a trust is raised by implication, in favor of the copartners. The half of the lot conveyed by Ancrum to Chiffslle in 1816, on which the mill is built, was nert bought with partnership funds; the other lot is not yet paid for, nor is there any thing to shew that it was to he paid for out of the partnership funds. Upon the face of the deeds, the land is the private property of Mr. Ancrum and Mr. Chiffelle, and it is too much to say that the mere use of it for the partnership in sawing, is sufficient to convert them into partnership property-against the private creditors of Ancrum fa Chiffelle; more especially as the land might well continue private property and the business of sawing go on notwithstanding. If it were intended that the lot which Mr. Ancrum owned, in December, 1816, and on which the mill w-as to he erected, should be partnership property, is it not reasonable to suppose that some de* claration in writing to that effect would have been made by í>im. instead of conveying, as he did then, the half of it to Mr». *34 Chiffelle? I- doubt much whether they intended to hold these lands as partnership property; but whether they did or not, as the land on the face of the deeds is private property, I am of opinion it cannot be declared otherwise without infringing on the statute of frauds.